UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COURTNEY L. W.,

                              Plaintiff,

v.                                                                                  8:20-cv-1233 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| COLLINS & HASSELER, PLLC<br>*Counsel for Plaintiff*<br>225 State Street<br>Carthage, NY 13619 | VICTORIA H. COLLINS, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>OFFICE OF THE GENERAL COUNSEL<br>*Counsel for Defendant*<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, MA 02203 | JAMES J. NAGELBERG, ESQ. |

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

      Courtney L. W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her requests for supplemental security benefits. (Dkt. No. 1.) This case has proceeded in accordance with General Order 18 of this Court. Pursuant to 28 U.S.C. § 636(c), the parties consented to the disposition of this case by a Magistrate Judge. (Dkt. No. 4.) Both parties filed briefs. (Dkt. Nos. 13, 18.) For the reasons set forth below, the Commissioner's decision denying Plaintiff's request for supplemental security benefits is affirmed.

**I.    BACKGROUND**

Plaintiff was born in 1988 and left high school after ninth grade. (T. at 34-35, 148, 162.[1]) Plaintiff has minimal work experience, and her impairments did not cause her to make changes in her work activities. *Id.* at 154, 161-62. She stopped working on June 1, 2010, when she quit her job. *Id.* at 161.

Plaintiff filed for supplemental security income on July 11, 2017, claiming a disability onset date of November 10, 2014. *Id*. at 148. Plaintiff claimed the following disabilities: post-traumatic stress disorder ("PTSD"), bipolar type II, and asthma. *Id.* at 161. The Commissioner denied Plaintiff's initial application, and she requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 68-72. ALJ Bruce S. Fein held a hearing on June 4, 2019, and Plaintiff testified. *Id.* at 30-48. No vocational expert testified at the hearing. *See id.* The ALJ denied Plaintiff's claim for benefits on September 11, 2019, and the Appeals Council denied Plaintiff's request for review on September 15, 2020. *Id.* at 1, 10-19. Plaintiff now seeks this Court's review. (Dkt. No. 1.)

**II.   STANDARD OF REVIEW**

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Brennan v. Colvin*, No. 13-CV-6338 (AJN) (RLE), 2015 WL

---

[1] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Page references to other documents identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[2] "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004). Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence. *Tejada*, 167 F.3d at 773; *Bowen*, 817 F.2d at 985. "Substantial evidence means more than a mere scintilla." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). Remand may accordingly be appropriate where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or persuasive value of witness testimony, *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019); *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008), or explain his reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d at 39.

---

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983). Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

3

### III.    DISCUSSION

#### A.    The ALJ's Evaluation of Dr. Frank's Medical Opinions

Dr. Joshua Frank, who treated Plaintiff over several years, offered three separate opinions on Plaintiff's mental capacity to do work related activities.  (T. at 807-808 (dated Jun. 27, 2018), 1608-10 (dated Apr. 19, 2019), 1714-16 (dated Jun. 11, 2019).)  In the first, dated June 27, 2018, Dr. Frank diagnosed Plaintiff with three relevant medical conditions: PTSD, attention deficit hyperactivity disorder, and opioid use disorder.  *Id.* at 807.  He opined Plaintiff had "very limited" functioning in all work-related mental capacities.  *Id.* at 808.  Dr. Frank accordingly concluded Plaintiff was "unable to work in any capacity," and had been unable to work since October of 2017.  *Id.*  He offered no explanation for these conclusions.  *See id.* at 807-808.

In his second opinion, dated April 19, 2019, Dr. Frank opined Plaintiff had mild,[3] moderate,[4] and marked[5] limitations in her mental abilities to do work-related activities.  *Id.* at 1608-10.  According to Dr. Frank, Plaintiff had mild limitations in her ability to carry out simple instructions and make judgments on simple work-related decisions.  *Id.* at 1608.  Dr. Frank also

---

[3] Dr. Frank completed this medical opinion on a checkbox form, which provides the following definition for "mild" limitations: "There is a slight limitation in this area, but the individual can generally function well."  (T. at 1608; *see also* 20 C.F.R. § 416.920a(c)(4) ("When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme."); *id.* at § 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities".).)

[4] The checkbox form provides the following definition for "moderate" limitations: "There is more than a slight limitation in this area but the individual is still able to function satisfactorily."  (T. at 1609.)

[5] The checkbox form provides the following definition for "marked" limitations: "There is serious limitation in this area.  There is a substantial loss in the ability to effectively function."  (T. at 1609.)

concluded Plaintiff had marked limitations in her ability to understand and remember simple instructions and respond appropriately to usual work attitudes and changes in a routine work setting. *Id.* at 1609. Dr. Frank cited no medical evidence and offered no explanation for these conclusions. *See id.* at 1608-10.

In his third opinion, dated June 11, 2019, Dr. Frank opined Plaintiff had marked and extreme[6] limitations in her mental ability to work-related activities. (T. at 1714-16.) He concluded Plaintiff had marked limitations in her mental ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. *Id.* at 1714. He also concluded Plaintiff's ability to interact with supervisors, co-workers, and the public was not impacted by her impairments. *Id.* at 1715. Again, he cited no medical evidence and offered no explanations for these conclusions. *See id.* at 1714-16.

The ALJ found Dr. Frank's opinions to be "less persuasive" than other medical opinions. (T. at 17.) According to the ALJ, Dr. Frank's opinions were "not well supported by reference to specific objective findings." *Id.* The ALJ further concluded Dr. Frank's "extreme findings of the [Plaintiff] being very limited in every listed area of mental functioning" were inconsistent with the record evidence. *Id.* By way of example, the ALJ found Dr. Frank's opinion that Plaintiff was "very limited in making simple decisions" to be inconsistent with evidence that she "lives on her own and takes care of her daily needs." *Id.* at 17-18.

---

[6] The checkbox form provides the following definition for "extreme" limitations: "There is major limitation in this area. There is no useful ability to function in this area." (T. at 1714; *see also* 20 C.F.R. § 416.920a(c)(4) (explaining that an "extreme" limitation "is incompatible with the ability to do any gainful activity.").)

5

### 1. The Parties' Arguments

Plaintiff claims the ALJ failed to properly consider the medical opinions of her treating physician, Dr. Frank. (Dkt. No. 13 at 13-14.) Plaintiff further claims substantial evidence does not support the ALJ's evaluation of Dr. Frank's opinions. *Id.* at 12, 14. The Commissioner contends substantial evidence supports the ALJ's evaluation of Dr. Frank's opinions because the opinions lack supporting evidence and explanations and were inconsistent with the evidence of record. (Dkt. No. 18 at 8-14.)

### 2. Legal Standard

For disability claims filed on or after March 27, 2017, an ALJ's review of medical opinion evidence and prior administrative medical findings is governed by 20 C.F.R. § 416.920c. Under this regulation, applicable here, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a); *see also Howard D. v. Saul*, No. 5:19-CV-01615 (BKS), 2021 WL 1152834, at *11 (N.D.N.Y. Mar. 26, 2021). Rather, the ALJ must use five factors to determine the persuasiveness of the medical opinion evidence and prior administrative medical findings: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." 20 C.F.R. §§ 416.920c(a)-(c); *see also Howard*, 2021 WL 1152834, at *11.

The two most important factors in this analysis are supportability and consistency. 20 C.F.R. § 416.920c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. The ALJ is specifically required to "explain how she considered the supportability and consistency factors" when determining the persuasiveness of "a medical source's medical opinions or prior administrative

medical findings." 20 C.F.R. § 416.920c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. "If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, No. 19-CV-4630 (LJL), 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see also Howard*, 2021 WL 1152834, at *12 (observing "courts have remanded where an ALJ did not adhere to the regulations") (collecting cases).

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant . . . objective medical evidence and supporting explanations," the "more persuasive" it will be. 20 C.F.R. § 416.920c(c)(1); *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532-MJR, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations."). Under the consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2); *Galo G. v Comm'r of the Soc. Sec. Admin*, No. 3:20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021) ("The regulations provide that with respect to consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.").

"An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion." *Howard D.*, No. 2021 WL 1152834, at *11; *see also* 20 C.F.R. §§ 416.920c(a), (b)(2). However, where the ALJ has found

two or more divergent medical opinions to be equally well supported and consistent with the record, the ALJ must articulate how he or she evaluated the three remaining factors. 20 C.F.R. § 416.920c(b)(3).

### 3. Substantial Evidence Supports the ALJ's Evaluation

Substantial evidence supports the ALJ's conclusion that Dr. Frank's opinions were unsupported by, and inconsistent with, evidence in the record. (*See* T. at 17; *see also* 20 C.F.R. §§ 416.920c(c)(1)-(2).) First, Dr. Frank did not reference, discuss, or present any objective medical evidence to support his medical opinions. (*See* T. at 807-08, 1608-10, 1714-16.) Under 20 C.F.R. § 416.920c(c)(1), the more relevant the objective medical evidence *presented by a medical source* are to support his medical opinions, the more persuasive the medical opinions will be. 20 C.F.R. § 416.920c(c)(1); *see also Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN)(KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) (explaining under the supportability factor, "the strength of a medical opinion is increased as the relevance of the objective medical evidence and explanations increase"). Dr. Frank's opinions do not cite objective medical evidence. (T. at 807-08, 1608-10, 1714-16.) They do not "present" objective medical evidence. *Compare id.*, *with* 20 C.F.R. § 416.920c(c)(1). Nor do they explain why objective medical evidence might support Dr. Frank's conclusions. (T. at 807-08, 1608-10, 1714-16.) Substantial evidence accordingly supports the ALJ's conclusion that Dr. Frank failed to support his opinions with objective medical evidence. *Id.* at 17.

Second, Dr. Frank's opinions are not consistent with evidence in the record. *See id.* at 17. Under 20 C.F.R. § 416.920c(c)(2), the more consistent medical opinions are with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinions will be. 20 C.F.R. § 416.920c(c)(2); *see also Galo G.*, 2021 WL 5232722,

at *4.  Dr. Frank's opinions about Plaintiff's work-related mental limitations are inconsistent with each other, (T. at 807-08, 1608-10, 1714-16), they are inconsistent with other medical opinion evidence, *id.* at 62-65, 798-802, 1590-94, 1687-89, and they are inconsistent with other evidence in the record, *id.* at 42-43, 45, 598, 801, 803-804, 1371, 1375, 1387-88, 1404, 1407, 1413-14, 1418.

Dr. Frank's medical opinions are inconsistent with one another. *Id.* at 807-08, 1608-10, 1714-16.  In his first opinion, he concluded Plaintiff's mental functioning was "very limited" in all categories.  *Id.* at 808.  Yet in his second opinion, Dr. Frank concluded some of Plaintiff's work-related mental limitations were only mild or moderate.  *See id.* at 1608.  In his third opinion, his conclusions about the same work-related mental limitations changed again.  *See id.* at 1714.  The limitations that Dr. Frank once considered to be mild and moderate were now considered to be marked and extreme.  *Compare id.* at 1608, *with id.* at 1714.  Conversely, some of the limitations Dr. Frank once considered to be marked were now considered to be nonexistent.  *Compare id.* at 808, 1609, *with id.* at 1715.  Dr. Frank provided no explanations for these inconsistencies.  *See id.* at 1608-10, 1714-16.

Dr. Frank's opinions were also inconsistent with other medical opinions on Plaintiff's work-related mental limitations.  *Compare id.* at 807-08, 1608-10, 1714-16, *with id.* at 62-65 (Dr. M. Momot-Baker), 798-802 (Dr. Dennis M. Noia), 1591-94 (Dr. Ronald Thesee), 1687-89 (Dr. Mary Eileen Buban).[7]  The conclusions about Plaintiff's ability to understand, remember, and carry out instructions from state agency psychological consultant Dr. M. Momot-Baker, psychiatric consultative examiner Dr. Dennis M. Noia, state agency psychological consultant Dr.

---

[7] The five-point rating scale used by Dr. Frank to rank Plaintiff's mental limitations was also used by Drs. Buban and Thesee.  (*See* T. at 1592-94, 1608-10, 1687-88, 1714-16.)  The definitions for each point on the scale (i.e., none, mild, moderate, marked, extreme) are identical. *See id.*

9

Mary Eileen Buban, and Plaintiff's mental health management specialist Dr. Thesee contradict Dr. Frank's conclusions on the same topic. *Compare id.* at 62-64, 801, 1592, 1687, *with id.* at 807-08, 1608-10, 1714-16. Dr. Momot-Baker, Dr. Noia, Dr. Buban, and Dr. Thesee each concluded Plaintiff had no significant limitations in her ability to understand, remember, and carry out simple instructions, but Dr. Frank concluded Plaintiff had marked limitations in those work-related mental capabilities. *Compare id.* at 62-63, 801, 1592, 1687, *with id.* at 1714. Similarly, Dr. Momot-Baker, Dr. Noia, and Dr. Buban each concluded Plaintiff had no significant limitations in her ability to make simple work-related decisions, but Dr. Frank concluded Plaintiff had marked limitations in that work-related mental capability. *Compare id.* at 63, 801, 1687, *with id.* at 1714. This substantial evidence demonstrates that Dr. Frank's opinions were inconsistent with the opinions from other medical sources.

Finally, Dr. Frank's opinions about Plaintiff's mental health limitations are inconsistent with evidence in the record. Specifically, Dr. Frank's conclusions that Plaintiff had marked to extreme limitations in her ability to understand, remember, and carry out instructions are inconsistent with years of treatment records—including Dr. Frank's own records—documenting Plaintiff's normal mental status examinations. *Compare id.* at 808, 1608, 1714, *with id.* at 279, 281, 287, 478, 564, 573, 576, 578, 582, 610, 627, 629, 642, 671, 674, 689, 699, 702, 705, 706, 710, 728, 800, 933, 936-37, 944, 963, 1193, 1201, 1212, 1219, 1242-43, 1246, 1262, 1273, 1339-40, 1371 (conducted by Dr. Frank on Oct. 19, 2017), 1375 (conducted by Dr. Frank on Nov. 2, 2017), 1387-88 (conducted by Dr. Frank on Dec. 27, 2017), 1404 (conducted by Dr. Frank on Feb. 21, 2018), 1407 (conducted by Dr. Frank on Mar. 20, 2018), 1413-14 (conducted by Dr. Frank on May 11, 2018), 1418 (conducted by Dr. Frank on Jun. 13, 2018); *but see id.* at 1374 (indicating a normal mental status exam, with some memory problems, conducted by Dr. Frank

10

on Oct. 26, 2017). The Court acknowledges that an individual could have normal mental status examinations in a healthcare setting but also struggle to understand, remember, and carry out instructions in a work setting. However, the evidence that could reasonably be used to support such a conclusion is lacking here. *See generally* 20 C.F.R. § 416.913(a) (outlining and defining categories of acceptable evidence); *id.* at § 416.929(c) (explaining how evidence is considered when evaluating the intensity and persistence of a claimant's symptoms and the extent to which they limit the claimant's capacity to work). Here, years of treatment records indicate Plaintiff consistently had normal mental status exams,[8] and evidence in the record indicates Plaintiff capably makes simple decisions while navigating her daily routine. *See id.* at 42-43, 45, 598, 801, 803-804.

      In sum, the ALJ's evaluation of Dr. Frank's opinion is supported by substantial evidence. *Tejada*, 167 F.3d at 773. Substantial evidence demonstrates Dr. Frank's opinions are unsupported by objective medical evidence or supporting explanations. *See* 20 C.F.R. § 416.920c(c)(1). Substantial evidence further demonstrates his opinions are inconsistent with each other, inconsistent with other medical opinions in the record, and inconsistent with Plaintiff's treatment records. *See id.* at § 416.920c(c)(2). The ALJ accordingly did not err in concluding Dr. Frank's opinions were "less persuasive" than opinions from other medical sources. (T. at 17.)

---

[8] (*See* T. at 279, 281, 287, 478, 564, 573, 576, 578, 582, 610, 627, 629, 642, 671, 674, 689, 699, 702, 705, 706, 710, 728, 800, 933, 936-37, 944, 963, 1193, 1201, 1212, 1219, 1242-43, 1246, 1262, 1273, 1339-40, 1371, 1375, 1387-88, 1404, 1407, 1413-14, 1418.)

### B. The ALJ's Symptoms Evaluation and Residual Functional Capacity Determination

Plaintiff claims the ALJ improperly evaluated her symptoms by considering her daily activities. (Dkt. No. 13 at 16-17.) Plaintiff argues the ALJ was not allowed to use her performance of routine daily activities as a basis to discredit her claims of a disabling condition. *Id.* at 16. The Commissioner contends the ALJ was required to consider Plaintiff's daily activities and did so appropriately. (Dkt. No. 18 at 22-23.) The Court agrees with the Commissioner.

First, the ALJ did not err in evaluating the extent to which Plaintiff's symptoms limited her capacity for work by considering her daily activities. *See id.*; *see also* 20 C.F.R. § 416.929(c)(3)(i). Once the ALJ concluded Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," (T. at 16), he was required to determine how those symptoms affected her ability to work. *See* 20 C.F.R. §§ 416.929(a), (c)(1); SSR 16-3P, 2017 WL 5180304, at *3 (explaining "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities"). To determine whether Plaintiff's symptoms affect her ability to work, the ALJ is required to evaluate the intensity and persistence of those symptoms. *See* 20 C.F.R. §§ 416.929(a), (c); *see also* SSR 16-3P, 2017 WL 5180304, at *3-8. That evaluation in turn requires the ALJ to

consider medical opinion evidence,[9] objective medical evidence,[10] other medical evidence,[11] and non-medical evidence,[12] including the categories of evidence set forth in factors listed under 20 C.F.R. §§ 416.929(c)(3)(i) through (3)(vii). *See* 20 C.F.R. § 416.929(c); SSR 16-3P, 2017 WL 5180304, at *3-8. Under the first factor, the ALJ was required to consider Plaintiff's daily activities. 20 C.F.R. § 416.929(c)(3)(i); *see also* SSR 16-3P, 2017 WL 5180304, at *7. The ALJ accordingly did not err by considering Plaintiff's daily activities when evaluating the intensity and persistence of her symptoms. (*See* T. at 16-17.)

Second, substantial evidence supports the ALJ's conclusion that the intensity and persistence of Plaintiff's symptoms did not limit her capacity to do work involving simple, routine, and repetitive tasks. *Id.* at 16-18. As explained above, most of the medical opinion evidence supports the conclusion that Plaintiff can perform simple, routine, and repetitive tasks. *See id.* at 62-64, 801, 1592, 1687. Dr. Momot-Baker, Dr. Noia, Dr. Buban, and Dr. Thesee each concluded Plaintiff had no significant limitations in her ability to understand, remember, and carry out simple instructions. *Id.* at 62-63, 801, 1592, 1687. Plaintiff's consistent normal mental

---

[9] "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities" to: perform physical, mental, and other demands of work; and adapt to environmental conditions. *See* 20 C.F.R. §§ 416.913(a)(2)(i)(A)-(D).

[10] "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R. § 416.902(k); *see also id.* at § 416.902(g) (defining laboratory findings); *id.* at § 416.902(l) (defining signs); *see generally* SSR 16-3P, 2017 WL 5180304, at *5 (discussing the consideration of objective medical evidence).

[11] "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3); *see generally* SSR 16-3P, 2017 WL 5180304, at *6-7 (discussing the consideration of other medical evidence).

[12] "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 416.913(a)(4); *see generally* SSR 16-3P, 2017 WL 5180304, at *7 (discussing the consideration of nonmedical evidence).

13

status examinations also suggest she is capable of simple, routine, and repetitive tasks.  *See supra*, note 16.  Plaintiff testified that she takes care of her personal needs, dresses and bathes herself, completes some housework, cooks, does laundry at the laundromat, and shops for food.  *Id.* at 42-46; *see also id.* at 598 (assessing Plaintiff's "Adult Daily Living Skills"), 801 (listing of Plaintiff's daily activities), 803-804 (same).  Based on this evidence and other evidence in the record, it was reasonable for the ALJ to conclude Plaintiff retained the mental residual functional capacity to understand, remember, and carry out simple instructions on a routine and repetitive basis.  *Id.* at 15-18.

### C. Plaintiff's Ability to Perform Simple Work

Plaintiff claims the ALJ failed to develop the record with evidence from a vocational expert.  (Dkt. No. 13 at 15.)  Plaintiff argues a vocational expert was needed to determine whether her "marked limitations in the category of adapting or managing oneself" would "impact [her] ability to perform simple work."  *Id.*  Plaintiff accordingly claims substantial evidence does not support the ALJ's conclusion that she retained the ability to perform simple work.  *Id.*

The Court disagrees.  The factual predicate for Plaintiff's argument—that she had "marked limitations" in her ability to adapt and manage herself—has limited support in the record.  *Id.*  Moreover, the thrust of Plaintiff's argument—that she could not perform simple work—is unsupported by the record.  *See id.* at 62-63, 801, 1592, 1687.  Substantial evidence supports the ALJ's conclusion that Plaintiff did not have marked limitations in her ability to adapt and manage herself, but was able to "perform simple, routine, and repetitive tasks in a low stress job."  *See id.* at 15-18; *see generally Sczepanski*, 946 F.3d at 157 ("Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

The medical opinion evidence supports the ALJ's conclusion that Plaintiff did not have marked limitations in her ability to adapt and manage herself.  (*See* T. at 15-18.)  Dr. Momot-Baker offered no opinion on Plaintiff's ability to manage herself but concluded her adaptation limitations ranged in degree from "not significantly limited" to "moderately limited."  *Id.* at 64.  Dr. Noia offered no opinion on Plaintiff's ability to adapt, but concluded she was "intellectually capable of managing money."  *Id.* at 801-802.  Dr. Buban concluded Plaintiff had moderate to marked limitations in her ability to adapt or manage herself.  *Id.* at 1707.  On April 19, 2019, Dr. Frank opined Plaintiff had marked limitations in her ability to "respond appropriately to usual work situations and to changes in a routine work setting," but on June 11, 2019, he concluded Plaintiff no longer experienced those limitations.  *Id.* at 1609, 1715.  In May of 2019, Dr. Thesee opined Plaintiff had extreme limitations in her ability to "respond appropriately to usual work situations and to changes in a routine work setting."  *Id.* at 1593.  In short, one medical source opined Plaintiff had extreme limitations in her ability to adapt to changes in the work setting, *id.* (Dr. Thesee), one opined Plaintiff had marked or nonexistent limitations in her ability to adapt to changes in the work setting, *id.* at 1609, 1715 (Dr. Frank), one opined Plaintiff had moderate to marked limitations in her ability to adapt and manage herself, *id.* at 1707 (Dr. Buban), one opined Plaintiff had mild to moderate limitations in her ability to adapt, *id.* at 64 (Dr. Momot-Baker), and one suggested Plaintiff had no limitations in her ability to manage money on her own, *id.* at 802 (Dr. Noia).

To adopt Plaintiff's interpretation of the record and conclude she had marked limitations in the ability to adapt *and manage herself*, one would have to accept Dr. Thesee's opinion (which only opined on adaptation limitations), ignore Dr. Frank's contrary opinion, exaggerate (i.e., round-up) Dr. Buban's opinion, and ignore the opinions from Dr. Momot-Baker and Dr. Noia.

15

Yet, Plaintiff only challenges the persuasive value assigned to Dr. Frank's opinions. (Dkt. No. 13.) Plaintiff advances no challenge to the ALJ's evaluation of opinions from Dr. Thesee (not persuasive), Dr. Buban (persuasive), Dr. Momot-Baker (persuasive), or Dr. Noia (persuasive). *Compare id.*, *with* T. at 17-18. Absent a challenge to the persuasive value assigned these opinions, Plaintiff's interpretation of the record rests on "a mere scintilla" of evidence. *See Sczepanski*, 946 F.3d at 157; *see also* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). The ALJ concluded this evidence did not support a determination that Plaintiff had marked limitations in her ability to adapt and manage herself. (T. at 15-18.) Substantial evidence supports that conclusion. *See Sczepanski*, 946 F.3d at 157.

Substantial evidence also supports the ALJ's conclusion that Plaintiff was "able to perform simple, routine and repetitive tasks in a low stress job," which the ALJ defined as "a job involving only occasional decision making, changes in work setting, and judgment." (T. at 15.) The thrust of Plaintiff's argument is that she could not perform simple work. (*See* Dkt. No. 13 at 15.) Yet, substantial medical opinion evidence suggests she had no significant limitations in her ability to understand, remember, and carry out simple instructions. *Id.* at 62-63 (Dr. Momot-Baker), 801 (Dr. Noia), 1592 (Dr. Thesee), 1687 (Dr. Buban). Substantial medical opinion evidence also suggests Plaintiff had no significant limitations in her ability to make simple work-related decisions. *Id.* at 63 (Dr. Momot-Baker), 801 (Dr. Noia), 1687 (Dr. Buban). Other medical evidence, including years of treatment records documenting Plaintiff's normal mental status examinations, does not tilt the scale in Plaintiff's favor. *See supra*, note 8. Nor does evidence that Plaintiff can take care of her personal needs, dress and bathe herself, complete

some housework, cook, do laundry at the laundromat, and shop for food. *Id.* at 42-46; *see also id.* at 598, 801, 803-804.

Plaintiff's argument lacks evidentiary support, but substantial evidence supports the ALJ's conclusions that she can adapt and manage herself while performing "simple, routine, and repetitive tasks in a low stress job." (T. at 15; *see also* 20 C.F.R. § 416.945(a)(3).)

## IV. CONCLUSION

Considering the foregoing, the Court finds the ALJ applied the correct legal standards and substantial evidence supports his decision. Remand is therefore not warranted.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff supplemental security income benefits is **AFFIRMED**; and it is further

**ORDERED** that the Plaintiff's complaint (Dkt. No. 1) is **DISMISSED** and the Clerk of Court is directed to enter judgment and close the case.

Dated: March 8, 2022
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge